## JAMES E. HOWELL

*v.*

## ESSEX COUNTY ROAD BOARD.

1. It is competent for the legislature not only to make taxes assessed on lands, liens thereon, but to give such liens precedence over all prior estates and rights therein.

2. A law authorizing assessments for benefits, to the extent that the benefits are exceptional, and not such as result to the community generally, is a proper exercise of the power of taxation.

Howell *v.* Essex Co. Road Board.

3. An assessment for benefits is a tax, and may, in the discretion of the legislature, be made a lien superior to all prior estates and rights in the land.

4. A statute which makes taxes a lien on land, and gives a mortgagee a right to redeem, and to tack the money paid in redemption to his mortgage debt, and provides that his rights under his mortgage shall not be divested without notice that the mortgaged premises have been sold for taxes, sufficiently indicates the purpose of the law-maker to make the tax lien paramount, to entitle it to override all prior mortgages on the land.

On demurrer.

*Mr. John W. Taylor*, for demurrants.

*Mr. Joseph Coult*, for complainant.

THE VICE-CHANCELLOR.

The complainant seeks by this suit to free his title to the lands in controversy from a cloud. He acquired title in December, 1876, under two mortgages, one made in 1839, and the other in 1873. The cloud he seeks to remove is an assessment for benefits, made in 1873, under the authority of the Essex County Road Board act, approved March 31st, 1869 (*P. L. 1869 p. 957*), and a sale made in 1876 in enforcement of it. The case comes before the court on demurrer, the defendants insisting that, upon the complainant's own showing, it appears that the imposition he seeks to have adjudged a mere shadow, is a valid lien, entitled to outrank and override his title. The question presented for decision is one simply of interpretation—whether or not the lien created by the act just mentioned was intended to be made the first and paramount encumbrance.

The fifteenth section of this act (*P. L. 1869 p. 963*) declares that all assessments made by virtue of it (except assessments for damages), shall remain liens upon the lands assessed, from the time the assessments are confirmed until they are paid; the assessments are to be paid in four equal, annual installments, and if any one of the installments shall

remain unpaid for six months after the same falls due, then all the installments unpaid shall become due, and suit may be brought for their recovery, or the Road Board may sell the lands assessed, for a term not exceeding fifty years. It is further enacted, in case a sale be made, that a certificate of sale shall be executed to the purchaser, and if, at the end of three years from the day of sale, the land shall not have been redeemed by the owner, or any mortgagee or judgment creditor, or other person having a legal or equitable interest in it, a declaration of sale shall be executed to the purchaser, who, by virtue thereof, shall hold and enjoy the land, with its rents, issues and profits, for his or her own proper use, against the owner thereof and all persons claiming under him, until the term for which he or she purchased shall be completed and ended. It then provides " that no mortgagee, whose mortgage shall have been recorded or registered before such sale, shall be divested of his rights in and to the land, unless six months' notice, in writing, of such sale shall have been given to him by the purchaser, or some person claiming under him." It is also provided that, if any mortgage or judgment creditor shall redeem the land so sold, he shall have a lien thereon for the amount by him paid in redemption, which he may recover and collect in the same manner and at the same time that he recovers and collects his mortgage or judgment.

The power of taxation is an attribute of sovereignty, to which all persons and property belonging to the body politic are subject. Unless restrained by constitutional provision, it is unlimited, and may be exercised according to the will of that branch of government to which it is delegated. In the absence of constitutional limitation, it is as absolute and as free from restraint, so long as it is used for purposes of taxation, and not for confiscation, as the will of a despot, and there is no security against its abuse, except that the legislature which authorizes the tax is responsible to the constituency which must pay it. In the exercise of this power, it is competent for the law-maker not only to make

taxes, assessed on land, liens thereon, but to give the tax lien precedence over all prior rights and estates therein. *Cooley on Taxation 305.*

Chancellor Green, in *Hopper* v. *Malleson's Ex'rs, 1 C. E. Gr. 386,* said: " The power of the legislature, by virtue of its sovereignty, to make a tax a charge upon the estate of all parties interested in the land, and to make the tax title paramount to all other and prior claims and encumbrances, is unquestionable." The rule, as thus stated, has recently been very distinctly affirmed by the court of errors and appeals. That court, after quoting the rule as formulated by Chancellor Green, adds : " The displacement of prior encumbrances, prejudicial to individual rights, can only be effected by the exercise of the sovereign power of taxation. It may be, and frequently is, the occasion of injustice, and, therefore, will not be presumed in the absence of a clear expression of legislative intent." *Trustees of Public Schools* v. *Trenton, 3 Stew. Eq. 679.* And in a case more recent still, that court has said : " The power of the legislature to make a tax lien superior to that of a mortgage, is not disputed." *Paterson* v. *O'Neill, 5 Stew. Eq. 386.*

The power of the legislature to declare, by a law enacted after the rights of a mortgagee are fully vested, that a tax levied by virtue of such law, on the lands mortgaged, shall be a lien on the mortgaged premises prior to that of the mortgage, must be considered unquestionable.

The imposition in controversy, it will be observed, is not a tax, in the ordinary sense of that term. It is not, strictly speaking, a contribution to the public revenue for the support of government, but an assessment for extraordinary or exceptional benefits resulting to a particular person from a local improvement. The theory upon which such impositions are sustained is, that the person whose land is assessed derives from the particular local improvement special and peculiar benefits, additional to those which result to the community generally, and that, inasmuch as he derives more advantage and profit from the public expendi-

44

ture in making the improvement than results to the other members of the community, it is but just that he should contribute the excess in discharge of the general burden. Laws authorizing such assessments, to the extent that the benefits are exceptional, have repeatedly been adjudged to be a legitimate exercise of the power of taxation. That proposition must be considered established law. *State* v. *City of Newark, 3 Dutch. 186 ; Tide Water Co.* v. *Coster, 3 C. E. Gr. 519 ; Matter of Drainage of Lands, 6 Vr. 497 ; State, Agens* v. *City of Newark, 8 Vr. 415; People* v. *Mayor of Brooklyn, 4 N. Y. 419.*

Two propositions may then, I think, be considered settled in this discussion : First, that it is competent for the law-making power of this state to make taxes, assessed on lands, liens prior and paramount to all pre-existing liens thereon, and consequently to any title derived under such pre-existing liens ; and, second, that laws authorizing assessments for benefits are within the sovereign power of taxation, and, consequently, that such impositions are entitled to precedence in every case where the legislature has clearly manifested a purpose to give them such rank.

But a single question remains: Has the legislature, in the law under consideration, clearly manifested a purpose to make the tax lien paramount to all prior rights and estates in the land ? A mere declaration by the law-maker that taxes shall be a lien upon the land assessed, does not, of itself, show an intention that the tax lien shall occupy the paramount position, but where, in addition to such declaration, the law authorizes a sale, severance and removal of something which constitutes a part of the land, as, for example, where a sale of timber is authorized, and a right is given to the purchaser to cut and remove it, it has been held there is a sufficient manifestation of a purpose to make the tax lien supreme over everything, to entitle it to override and overreach all prior estates in, and liens upon, the land, to the extent that the purchaser is authorized to sever and remove. *Morrow* v. *Dows, 1 Stew. Eq. 459.*

And so, too, it has been held, where a law declares that a tax assessed on land shall be a lien thereon, which may be enforced by sale, and a right of redemption is given to a mortgagee, and provision is made that his rights shall not be divested until he shall have had six months' written notice of the sale, that the law contains a sufficient expression of a legislative purpose to make the tax a lien and title paramount, to entitle them to that position against a mortgagee. *Campbell* v. *Dewick, 5 C. E. Gr. 186.*

The statute under examination in the case just cited, it will be observed, was, in all material particulars, identical with the one under discussion.

In *O'Neill* v. *Dringer, 4 Stew. Eq. 507*, this court held that a statute simply giving a mortgagee a right to redeem the tax lien, without any other expression indicating an intention to cut out his rights, did not afford sufficient evidence of a design to dislodge his lien to justify an adjudication that the tax lien should override it. But the court of errors and appeals gave this statute a different interpretation, it being there held that the right of redemption given to the mortgagee, coupled with the fact that his mortgage was exempt from taxation, and that the mortgaged premises were directed to be assessed to the owner at their full and fair value, made it clear that it was the intention of the legislature that the tax lien should take precedence of a mortgage charged upon the property prior to the levy of the tax. *City of Paterson* v. *O'Neill, 5 Stew. Eq. 386.*

I believe it may be safely affirmed that the law upon this subject is entirely settled to this extent, that where a statute makes taxes a lien on land, and gives a mortgagee a right to redeem and to take the money paid in redemption of his mortgage debt, and also provides that his rights under his mortgage shall not be divested without notice that the mortgaged premises have been sold for taxes, and being afforded an opportunity to redeem them, the tax lien is made, by the statute, the first charge upon the land, and

overrides all prior mortgages on it. Taking this as the established rule of law, there can be no doubt respecting the relative positions of the parties to this suit. An intention to subordinate all rights and estates to the lien for taxes, is clearly manifested on the face of this statute, and, this being so, the tax lien must be allowed to take precedence of the complainant's title. Not having received the notice made necessary by the statute to divest his rights, he may redeem, but he is not entitled to a decree expunging the tax lien.

The jurisdiction of the court not having been denied or discussed on the argument, I have not thought it necessary to enter upon the consideration of that question, but, taking it for granted that the complainant is in the proper forum, I hold that he is not entitled, upon the case made by his bill, to the relief he asks.

The demurrer must be sustained, with costs.